# EXHIBIT 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

Case No. 17-CA-7537

LUTZ SURGICAL PARTNERS, PLLC,

    Plaintiff,

vs.

HEALTH OPTIONS, INC.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT HEALTH OPTIONS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE came before the Court on Defendant Health Options, Inc.'s ("Health Options") May 1, 2020 Motion for Partial Summary Judgment (D.E. 54) (the "Motion"). The Court has considered the Motion, Plaintiff Lutz Surgical Partners, PLLC's ("Lutz") June 10, 2020 Response in Opposition to the Motion (D.E. 63), and Health Options' June 15, 2020 Reply Memorandum in Support of the Motion (D.E. 65), heard oral argument of counsel on June 17, 2020, and is otherwise fully advised in the premises. It hereby is

**ADJUDGED** that the Motion is GRANTED. The Court holds that Fla. Stat. § 641.3155(17), requiring that "all claims for underpayment from a provider . . . must be submitted to the health maintenance organization within 12 months after the health maintenance organization's payment of the claim," is a condition precedent to the bringing of a lawsuit. The Court therefore grants partial summary judgment in favor of Health Options as to all claims brought within this litigation that do not meet this absolute requirement of Fla. Stat. § 641.3155(17).

DONE AND ORDERED in Chambers in Hillsborough County, Florida, this 23 day of July, 2020.

GREGORY P. HOLDER
CIRCUIT COURT JUDGE

1

cc:   Justin B. Uhlemann (*juhlemann@foley.com*)
      Christopher M. Murphy (*cmurphy@mwe.com*)
      Christina M. Kennedy (*ckennedy@foley.com*)
      Katlin C. Cravatta (*kcravatta@foley.com*)
      Nathan M. Berman (*nberman@zuckerman.com*)
      D. Brian Hufford (*dbhufford@zuckerman.com*)
      Jason S. Cowart (*jcowart@zuckerman.com*)
      Jeffrey M. Liggio (*jliggio@liggiolaw.com*)
      L. Jason Cornell (*jcornell@liggiolaw.com*)

4847-4377-7211.7

# EXHIBIT C

## Page 1

IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN
AND FOR HILLSBOROUGH COUNTY, FLORIDA
CASE NO.:17-CA-07537
DIV. E

LUTZ SURGICAL PARTNERS,         )
PLLC, ON ITS                    )
OWN BEHALF AND ON BEHALF        )
OF ALL OTHERS SIMILARLY         )
SITUATED,                       )
                                )
                                )
          PLAINTIFF,            )
VS.                             )
                                )
                                )
BLUE CROSS AND BLUE SHIELD      )
OF FLORIDA, INC., HEALTH        )
OPTIONS, INC., AND              )
GUIDEWELL MUTUAL HOLDING        )
CORPORATION,                    )
                                )
                                )
          DEFENDANT.            )
_____/

HEARING BEFORE:    HON. GREGORY HOLDER

DATE:              JUNE 17, 2020

TIME:              10:00 A.M. - 10:35 A.M.

PLACE:             VIA ZOOM REMOTE CONFERENCING

REPORTED BY:       TAMARA MASCI TANNEN, RPR,
                   NOTARY PUBLIC, STATE OF FLORIDA

## Page 2

1  APPEARANCES:
2  NATHAN M. BERMAN, ESQ.
   ZUCKERMAN SPAEDER LLP
3  101 E. KENNEDY BOULEVARD
   SUITE 1200
4  TAMPA, FLORIDA  33602-5838
   NBERMAN@ZUCKERMAN.COM
5    COUNSEL APPEARING ON BEHALF OF THE PLAINTIFF.
6
7
   JUSTIN B. UHLEMANN, ESQ.
8  FOLEY & LARDNER LLP
   ONE BISCAYNE TOWER
9  2 S. BISCAYNE BOULEVARD
   SUITE 1900
10 MIAMI, FLORIDA  33131
   JUHLEMANN@FOLEY.COM
11   COUNSEL APPEARING ON BEHALF OF THE DEFENDANT.
12
13 ALSO PRESENT: (VIA ZOOM)
14 Jeremy Ches, Esq., Assistant General Counsel Health Options.
15 Susannah Crotts, Judge Holder's Summer Legal Intern

## Page 3

1       P R O C E E D I N G S
2            * * * *
3       THE COURT:  All right.  I've reviewed everything
4  you all have sent me and the various notebooks.  I have
5  those highlighted, circled, underlined.  So let's talk
6  about Section 641.3155 (17).
7       Mr. Uhlemann, it's your motion for partial summary
8  judgment, sir.
9       And if you all want to loosen your ties, take off
10 your jackets.  My order says casual.  I'm one of the
11 few people in the courthouse, so I'm casual.  It's up
12 to you.  Get comfortable, please.
13      Mr. Uhlemann.
14      MR. UHLEMANN:  Thank you, Your Honor.  Justin
15 Uhlemann of Foley & Lardner on behalf of the defendant
16 Health Options.  And with me, is Jeremy Ches, who is
17 assistant general counsel for Health Options.
18      THE COURT:  Very good.  Welcome.
19      MR. UHLEMANN:  So given that Your Honor has
20 reviewed all of the materials that the parties have
21 submitted, I'd like to hit some of the highlights and
22 focus my presentation today, Your Honor, on the statute
23 itself.
24      THE COURT:  Please.
25      MR. UHLEMANN:  641.3155 addresses two core topics:

## Page 4

1  one, the procedures for processing original provider
2  claims, which is not at issue on this motion; and two,
3  subsequent separate procedures for the resolution of
4  disputes by both sides regarding the amount paid on
5  those claims.  That is the issue that we're here --
6       THE COURT:  Yes, the underpayment and overpayment
7  provisions of that statute.
8       MR.UHLEMANN:  That's right, Your Honor.
9       And the legislature recognized that in requiring
10 the expedited processing of large numbers of claims,
11 that there would be disputes by both sides regarding
12 the amount of payment.
13      So subsections 1 through 4 of the statute address
14 the processing of original provider claims.
15 Subsections 5 and 16 address the resolution of disputes
16 regarding overpayments.  And subsection 17, the instant
17 provision, addresses the resolution of disputes
18 regarding claims for underpayment.
19      So if you look at subsection 17, the first
20 sentence of subsection 17 says that, "A physician's
21 claim for underpayment "must be submitted" within 12
22 months of payment of the claim."
23      But it doesn't stop there.
24      The second sentence of subsection 17, Your Honor,
25 prescribes the consequence of non-compliance with the

Page 5

1   first sentence by stating that an untimely claim for
2   underpayment, "may not be permitted."
3       And importantly, Your Honor, this is a reciprocal
4   obligation.  If you look at subsection 16, not directly
5   at issue in the motion that relates to overpayment,
6   there is the same first sentence and the same second
7   sentence.  If a physician believes that a claim has
8   been underpaid, it must submit its claim for
9   underpayment within 12 months or that claim is barred.
10  And on the other side, if an HMO believes that its made
11  an overpayment to a physician, it must submit that
12  claim for overpayment to the physician within 12 months
13  or, under the second sentence of subsection 16, just
14  like subsection 17, that claim "may not be permitted."
15      And what these provisions do, Your Honor, is they
16  encourage the parties to attempt to resolve disputes
17  over the amount of payment prior to commencement of
18  litigation.  And we think that the second sentence of
19  both subsection 16 and subsection 17 are clear on their
20  face.  There is nothing that they can mean other than
21  that if in a claim for overpayment or a claim for
22  underpayment is untimely, it's barred.
23      Therefore, that's why we're asking the Court to
24  rule that any Lutz's -- the plaintiff, Lutz Surgical
25  Partners' claims for underpayment that were not

Page 6

1   submitted to Health Options within 12 months of payment
2   are barred.
3       Now, the way I read Lutz's response is that Lutz
4   agrees that subsection 17 applies to its claims.  But
5   what it disagrees is regarding the alleged consequence
6   of non-compliance.
7       And what Lutz says is that consequence doesn't
8   have any impact on litigation.  It's limited to the
9   other prompt pay provisions within 641.3155 itself.
10      And there's at least four reasons in my view, Your
11  Honor, why Lutz's interpretation is incorrect.
12      THE COURT:  Well, it's interesting, there's no
13  real case law dispositive of this issue.  I mean, if
14  there were, you two would have found it.  By you two, I
15  mean you three.
16      And just interrupting for one moment, I did want
17  to introduce my colleague, legal intern Miss Susannah
18  Crotts, who is on the line listening, observing this
19  proceeding with my approval.  She works with us this
20  summer before she returns to law school.  And I told
21  her this would be an excellent hearing to observe, as
22  she would see superb lawyering.  And when she is
23  granted access to JAWS, we'll see some excellent legal
24  writing.
25      So no, I do apologize for not initially

Page 7

1   introducing Miss Closets to you.
2       But again, there's really no dispositive case that
3   I've seen.
4       What's your best case, Mr. Uhlemann?
5       MR. UHLEMANN:  Well, we agree -- I think both
6   sides agree, Your Honor, that either subsection 16 nor
7   subsection 17 have yet been interpreted, at least in a
8   published available decision.  Perhaps there's some,
9   you know, order out there that neither side is aware
10  of.  Although both sides, frankly, operate in this
11  arena regularly.  And neither side is aware of --
12      THE COURT:  Right.
13      MR.UHLEMANN:  -- a case interpreting it.
14      So Your Honor, our view is that the only way to
15  make sense of the statute is to find that those second
16  sentences -- those second sentences in subsections 16
17  and 17 mean that if you don't submit your claim for
18  underpayment or overpayment timely, it's barred.
19      And I think part of how we look at it is that when
20  we try to evaluate Lutz's alternative interpretation,
21  it's not viable.  So we think we've made sense of the
22  statute.
23      I can tell you four reasons why I believe Lutz's
24  interpretation is not viable in terms of the statute.
25  And therefore, we don't see what the second sentence in

Page 8

1   16 and 17 could mean, other than that untimely claims
2   for overpayment and underpayment are barred.  Because
3   the first sentence sets forth the requirement to submit
4   the claim.  The second sentence has to mean something.
5       Now, what Lutz says, Your Honor, is that the
6   consequence of non-compliance is not that claims are
7   barred, but that other rights under the prompt pay
8   statute -- you lose other rights under the prompt pay
9   statute if your claim for underpayment or overpayment
10  is untimely.
11      There are four reasons why that's wrong:  One,
12  Lutz points to subsections 3 and 4.  Subsections 3 and
13  4 don't apply to claims for overpayment or claims for
14  underpayment.  Subsections 3 and 4 apply to original
15  claims.  Subsections 3 and 4 were put in the statute in
16  2002, six years before there was even mention of
17  underpayment.  That was not until 2008.  And subsection
18  1 defines a claim as a HCFA 1500 claim form or its data
19  set.  And that's a the form that's used by providers to
20  submit original claims with what procedure they
21  performed on who, when, and how much they billed for
22  it.  It's not a medium by which you could dispute the
23  amount of payment one way or the other.  So it makes no
24  sense, based upon the history or structure or terms,
25  that subsections 3 and 4 would apply to a claim for

Page 9

1  underpayment.
2       Two, the legislature did prescribe prompt pay
3  obligations with respect to claims for overpayment.
4  Those are in subsection 5; 5(a) particularly.
5       The legislature did not prescribe any prompt pay
6  obligations with respect to claims for underpayment.
7  They've prescribed a deadline to submit them and a
8  consequence if you didn't submit them within that
9  deadline, but there are no prompt pay obligations with
10 respect to claims for overpayment -- I mean,
11 underpayment -- excuse me, Your Honor -- like there are
12 for overpayments in subsection 5.
13      Three, and perhaps most importantly, even if
14 subsections 3 and 4 did apply to claims for
15 underpayment, it wouldn't change the result because
16 subsections 3 and 4 do not prescribe the deadline to
17 submit a claim or the consequence of failure to do it
18 timely.  That's prescribed by the second sentences in
19 16 and 17.
20      So even if subsections 3 and 4 apply to subsection
21 17, they do not speak to the issue that we're talking
22 about today.
23      And fourth, if you look at subsection 16, I think
24 it gives a clue regarding this issue.  If you look at
25 the second sentence in subsection 16, there's an

Page 10

1  exception to the 12-month bar.  That exception is for
2  fraud -- for a provider convicted of fraud.  Fraud is a
3  very common exception to things like limitations
4  experience.
5       And under subsection 16, a HMO has to submit a
6  claim for overpayment within 12 months unless it's with
7  respect to a provider convicted of fraud; and then it
8  has a longer period of time to do it.  In our view,
9  that shows that these second sentences in 16 and 17
10 have preclusive effect beyond the statute itself.  It's
11 talking about your ability to prosecute a claim for
12 overpayment or a claim for underpayment.  If you don't
13 submit it timely and don't give the parties an
14 opportunity to resolve that claim, then it's barred.
15      So we don't think it matters whether the court
16 construes this as a condition precedent, a statute of
17 limitations, or something like a statute of limitations
18 a bar to a claim.  We don't see any way to interpret
19 the statute other than that an untimely claim for
20 underpayment or overpayment is barred.
21      Now, we think it's for the Court to decide how to
22 characterize it.  We don't think that you need to
23 because we think that the statute's clear on its face
24 and we don't think that Lutz has offered Your Honor a
25 viable alternative interpretation of the statute that

Page 11

1  could make it make sense.
2       But that being said, we don't think there's any
3  impediment to Your Honor determining that this is, for
4  instance, a condition precedent.  And we'd point Your
5  Honor to the Florida Supreme Court's decision in Galen,
6  which dealt with a different statute, but held that the
7  legislature need not use any express words or magic
8  words to prescribe a condition precedent.  The dissent
9  in Galen raised the specific argument -- specifically
10 raised the same argument that Lutz is raising here.
11 The majority rejected it.
12      In Galen -- Galen dealt with statute 766.316.
13 That statute requires physicians who participate in the
14 Florida Birth-related Neurological Injury Compensation
15 plan to give notice to their patients of their
16 participation prior to delivery.  And the Court found
17 that that notice was a condition precedent to asserting
18 the plan's defense of immunity, even though the statute
19 doesn't say anything about litigation.
20      And the Court found that the only logical reading
21 of the statute was that immunity must be conditioned on
22 notice.  Here, we're making the same argument:  The
23 only logical reading of this statute is that untimely
24 claims for underpayment must be barred.  There's no
25 material distinction between a condition precedent to

Page 12

1  asserting a defense versus a condition precedent to
2  asserting a claim.
3       And finally, all of the cases upon which Lutz
4  relies deal with a third statute.  That statute is
5  Florida statute 559.715.  And it requires notice to a
6  debtor of the assignment of the right to bill and
7  collect a consumer debt.
8       And that statute, Your Honor, is materially
9  distinguishable from the one in this case because
10 there's no prejudice to the debtor if it doesn't
11 receive notice of the assignment prior to initiation of
12 litigation.  The debtor knows the debt exists and the
13 debt's the same before and after the assignment.
14      In contrast here, there's prejudice to the HMO if
15 it doesn't receive notice of the claim for underpayment
16 or to the provider if it doesn't receive notice of the
17 claim for overpayment.  Neither of those types knows
18 that the other side disputes the amount of payment.
19 And if it doesn't give pre-suit the notice, it has no
20 opportunity to investigate it while it's fresh,
21 potentially pay it if appropriate, try to resolve it in
22 some fashion, maybe agree to a going-forward rate deal
23 with the other side to preclude further disputes.
24      So we don't think there's any impediment to the
25 Court finding that this is a condition precedent.  We

3 (Pages 9 to 12)

Page 13

1  don't think there's any impediment to the Court finding
2  this is a bar to asserting a claim.  It could a statute
3  of limitations.  It could be something different.
4  Right?  Perhaps this isn't a bar to asserting a cause
5  of action.  No one is saying that Lutz can't bring a
6  claim under the statute, bring a breach of contract
7  claim, bring any type of theory like that.  But what
8  they can't do is assert that a claim was underpaid.
9  They cannot bring a claim for underpayment.
10       And however, you characterize it:  Condition
11 precedent, statute of limitations, some other
12 procedural bar to asserting a claim, it's the only way
13 to make sense of the statute.  And it serves a
14 legislative purpose.  These disputes happen all the
15 time.  They happen all the time.  And what the
16 legislator was trying to do in my view is provide a
17 context for the parties to resolve some of them prior
18 to litigation.
19       And that's why we ask the Court to find that the
20 second sentence in subsection 17 prescribes that for a
21 physician's claim for underpayment, if it's not
22 submitted within 12 months of payment of the claim, is
23 barred.  I'm happy to answer any questions that the
24 court might have.
25       THE COURT:  I'll turn to Mr. Berman first.  Go

Page 14

1  ahead, sir.
2       MR. BERMAN:  Your Honor, as you mentioned earlier,
3  in the 12 years that subsection 17 has been on the
4  book, no court has ever found that it acted as a
5  condition precedent, it's a statute of limitations, or
6  any other type of bar to civil litigation.  And that's
7  because the prompt pay act has absolutely no effect on
8  civil litigation, such as the lawsuit that Lutz has
9  brought under an entirely different section.  It's
10 simply limited to the administrative claims process
11 whereby providers submit bills for --
12       THE COURT:  Mr. Berman, if you can't bring a
13 claim, how is it that under the statutory scheme, you
14 can bring a lawsuit on a claim that is otherwise barred
15 by the statutory framework?  That's the question I have
16 for you.
17       MR. BERMAN:  Well, Your Honor, I don't think 3155
18 bars any lawsuit.  I think it establishes a --
19       THE COURT:  You agree it bars the claim, the
20 underlying claim?
21       MR. BERMAN:  I think that it's completely unclear
22 what a claim means.  A claim is simply a submission of
23 a bill, for lack of a better term, to the HMO to pay
24 it.
25       And we disagree with Health Options'

Page 15

1  interpretation that there's only -- I'll call it two
2  ways to read the statute.  We believe that the 3155
3  lays out two separate procedures for the processing of
4  claims.  There's the procedure that is contained in
5  section 3 and section 4 that applies to both claims,
6  which would be original claims, as well as claims for
7  underpayment that have to be paid by the HMOs.  And
8  then subsection 5 addresses claims for overpayment that
9  HMOs send to providers.
10       And we think the legislature intended that claims
11 for underpayment would be processed in the same way as
12 original claims.
13       If you adopt Health Options' view, there's
14 absolutely no procedural process that has to be
15 followed for a claim for underpayment.  The provider
16 simply has to submit it.  The HMO is absolutely under
17 no obligation to respond at all, let alone in a timely
18 manner.  And under that view, we don't see how it
19 advances the theory that Mr. Uhlemann put forth as for
20 the purpose of the statute.  It doesn't give the
21 opportunity for the HMO to respond.  In fact, the
22 provider doesn't have to submit a claim for
23 underpayment at all.  It could turn around as soon as
24 it gets paid and head to court and file a lawsuit.
25 There's simply nothing in the language of subsection 17

Page 16

1  that requires the provider to submit a claim for
2  underpayment before it files a lawsuit.
3       I think it's important to note, judge, that there
4  are sections of 3155 that contemplate preclusive
5  effects outside of the statute itself.  For example, if
6  you look at sections 3, 4, and 5, they all discuss that
7  if a provider, an HMO, depending on the various
8  sections, fails to timely respond to the claim, it
9  creates an uncontestable obligation to pay the claim.
10 That language contemplates consequences outside of the
11 claims process itself.  And we think it contemplates
12 the idea of future litigation.
13       Notably, that language is absent from subsection
14 17.  There's no mention in subsection 17 at all that a
15 failure to submit a claim is going to impact
16 litigation.  It's just simply not there.  Health
17 Options is effectively asking the Court to read in
18 language in the statute that's just not there.
19       If the legislature had intended to include such
20 preclusive effect, it could have done so.  It did so
21 elsewhere in the statute and it did not do so in
22 subsection 17.
23       So we don't think subsection 17 is clear on its
24 face as Health Options believes it is.  I think Health
25 Options is having to read in -- into the statute

Page 17

1  language that just isn't there.  Because subsection 17
2  doesn't mention a lawsuit at all.  In fact, nowhere in
3  3155 does it mention a lawsuit, whether it's brought
4  under 641.513, such as the lawsuit Lutz has brought, or
5  any other lawsuit.  It simply discusses an
6  administrative claims process.
7       Now, Mr. Uhlemann also says it doesn't matter
8  whether we construe the statute as a statute of
9  limitations or a condition precedent or some other
10 unknown type of bar.  But I think their inability to
11 identify which one it is just shows the weakness of its
12 argument.  And the differences in fact do matter.
13 There's a vast difference between a statute of
14 limitation that bars a claim no matter what once it's
15 past a certain date.
16      THE COURT:  It's not a statute of limitations.
17 Ignore that argument.
18      MR. BERMAN:  Okay.
19      MR.UHLEMANN:  It's a condition precedent.  And
20 that's the real crux of the argument here.
21      MR. BERMAN:  Okay.  And I'm happy to turn to that.
22 The condition precedent requirement, judge, the Second
23 DCA has made it clear that there must be language in
24 the statute that indicates that it's an intent to be a
25 condition precedent.

Page 18

1       Now, a condition precedent is, you must do
2  something before you can do something else.  In this
3  case, you know, Health Options' theory is that you must
4  file a claim for underpayment before you can file a
5  lawsuit.  But the statute doesn't say that.
6       As I mentioned before, a provider is free to file
7  a lawsuit a day after it receives its payment from the
8  HMO.  There's nothing in there that requires this
9  additional step of filing a claim for underpayment with
10 the HMO.  There's just -- there's no mention of it.
11 You know?  And I think to create a condition precedent
12 here would be requiring the Court to make a judicial
13 amendment of the statute.
14      You know, Health Options relies upon Galen versus
15 Braniff in a claim that -- there's no reference to it
16 in the lawsuit, but I think if you look at Galen and
17 the NICA plan that interpreted it, the entire plan is
18 all about litigation and lawsuits.  It's about whether
19 the plaintiff was able to proceed with the lawsuit in
20 court or whether it had to be channeled into this
21 administrative no-fault claims handling process that
22 the legislature had created.
23      If you look at the opinion in Galen, the Supreme
24 Court analyzed the entire NICA plan section and not
25 just the one narrow statute that discussed the notice

Page 19

1  requirement.  So I don't really see how Galen actually
2  helps Health Options in this case.  I just --
3       You know, if you look at all the condition
4  precedents that are based on statutes in Florida, they
5  all require and lay out -- whether they use the express
6  words "condition precedent," they all lay out that the
7  plaintiff must do something first before going to the
8  lawsuit.  There's no indication in subsection 17 of
9  that requirement here.  And for that reason alone, I
10 think their argument fails.
11      Now, to the extent that Health Options argues that
12 there's some other bar that's unknown out there, you
13 know, I'm not aware of what that would be, Your Honor.
14 I think there are serious due process concerns with
15 implementing a bar that the party, my client, doesn't
16 have notice of.  I think it raises access to court
17 issues.  And again, their inability to articulate what
18 exactly that is I think is fatal to their argument.
19      You know, Your Honor, again, I disagree.  I don't
20 think that their interpretation of the statute is that
21 clear.
22      Under their interpretation, the legislature would
23 have laid out specific processes for original claims,
24 it would have laid out specific processes for claims
25 for overpayment.  But then when it got around to

Page 20

1  dealing with claims for underpayment, the only
2  requirement it imposed is a 12-month deadline, but
3  there's no further process, there's no further
4  procedure, you know, one that conflicts with the
5  legislative construct of the rest of the statute.  And
6  I also think candidly it just makes no sense, Your
7  Honor.
8       If the legislature was going to address claims for
9  underpayment, I think it would have implemented some
10 procedures to allow, as Mr. Uhlemann points out,
11 pre-litigation resolution of the case.
12      If you read the statute the way we read it and
13 that claims for underpayment must go through the claims
14 process in 3 or 4, then there's more -- there's more
15 structure to it and it makes more sense.
16      And Your Honor, I think finally, as the cases we
17 cite in there and as the Florida constitution notes,
18 any ambiguity on this issue has to be resolved in
19 Lutz's favor to ensure that it has fair access to the
20 courts.  Lutz is suing to enforce a statutory right
21 that was created by the legislature to ensure that it
22 is fairly paid for the provision of emergency services
23 and cares to Health Options' HMO members and patients.
24      So unless the legislation is clear, which it
25 clearly is not, because, you know, Health Options is

Page 21

1  uncertain as to what it means -- obviously, we have a
2  different interpretation of it -- you know, I think the
3  legislature has not clearly spoken on what this is.
4      And that's the legislature's job, Your Honor, not
5  your job.  And any ambiguity must be resolved in
6  Lutz's favor and access to the courts.  And I hope I
7  addressed your question.
8      MR. UHLEMANN:  May I respond, Your Honor, when he's
9  finished?
10     THE COURT:  Briefly, yes, sir.
11     MR. UHLEMANN:  So we don't see any ambiguity or due
12 process issue.  It's explicitly set out in the statute.
13 And the elephant in the room in our view is that Lutz
14 still doesn't deal with what the second sentence in
15 either of those subsections mean.  So regardless of any
16 other argument that it makes, it still has not made
17 sense of that second sentence.  That second sentence
18 has to mean something.  And the only thing in our view
19 that it could mean is the claim that barred.
20     THE COURT:  Thank you.  I'm looking at the
21 complaint.  I must state for the benefit of the record
22 that I enjoyed reading the arguments advanced by
23 counsel for the plaintiff and the defendant.  These are
24 work products certainly of the highest caliber in our
25 profession and are certainly a tribute to the

Page 22

1  professionalism of you ladies and gentlemen.  Because I
2  know other men and women worked on these products, I'm
3  certain, and your law firms.  It's a pleasure to read
4  work product such as this -- not a burden.
5      You know, I often, when I teach various law-
6  related courses, both undergraduate and graduate, at
7  various universities -- and I have for -- well, since
8  1987 -- you know, I talk about the Queen's English and
9  the fact that, you know, we speak the Queen's English
10 and the queen -- and I don't mean any offense to Queen
11 Elizabeth -- is ambiguous in that our language is
12 filled with ambiguity more than most languages.  I
13 think we can all agree on that.
14     But ultimately, it is for the Court to interpret
15 and apply this statute, 641.3155 (17).  And you have
16 both highlighted it and analyzed it within your
17 respected papers.
18     But I went back and looked at the complaint
19 itself, which is based, at least beginning in paragraph
20 27 of the complaint filed on August 10, 2017, on claims
21 submitted by Lutz.  I'm quoting that verbiage.
22     I certainly recognize the fact that for whatever
23 reason, this particular statute and subsection have not
24 been judicially determined in any manner for or against
25 the respected position of the parties in this lawsuit.

Page 23

1  So one of two things has occurred:  Either every other
2  judge is smart enough to figure it out, or if it was
3  appealed, no decision was written and the issues, if
4  any, were summarily decided by the district court,
5  which is certainly within their purview.
6      You mention, Mr. Berman, the obligation of this
7  Court, the sworn duty of this Court to enforce the laws
8  of this state consistent with our oath.  And I have
9  always believed and continue to believe in the
10 separation of powers of the three separate, but
11 supposedly, equal branches of government, both at the
12 federal and state level.
13     ==Having read, reread, reread again, and then reread==
14 ==many more times this particular statute, and underlined==
15 ==and highlighted and circled the obligatory verbiage, I==
16 ==can reach no other conclusion but that section 641.3155==
17 ==(17) is a condition precedent to the bringing of any==
18 ==lawsuit based upon claims made by Lutz or any other==
19 ==punitive plaintiff in this potential class action==
20 ==lawsuit.==
21     Despite the fact that there is no language,
22 express language, as you argue, Mr. Berman, stating,
23 underlining, highlighted for the benefit of any
24 judicial officer who might be called upon to interpret
25 this statute that this is a condition precedent, ==I can==

Page 24

1  ==read the statute in no other manner in order to give==
2  ==effect to the statutory interest framework approved by==
3  ==both the legislative and executive branches of this==
4  ==state government.==
5      I, therefore, grant partial summary judgment as to
6  all claims brought within this litigation that do not
7  meet what this Court finds to be an absolute
8  requirement of section 641.3155 (17).
9      Obviously, I recognize the fact that this is a
10 matter of great public import.  I'm either really,
11 really right or really, really wrong.
12     If I'm wrong, Mr. Berman, I will apologize to you.
13 We are called upon as judicial officers consistent with
14 our oath to God, to do our level best.  And I have done
15 so.  You all should expect and demand no less.  We are
16 also called upon to make difficult decisions.  And this
17 one indeed is one of those difficult decisions that
18 obviously greatly impacts the matters brought before
19 this Court with respect to the rights and obligations
20 of the parties to this litigation.  I fully understand
21 them.  That's an obligation that I accepted 26 years
22 ago and an obligation that I'll fulfill for another 197
23 days.
24     Are there any questions, gentlemen?
25     MR. UHLEMANN:  No, Your Honor.

6 (Pages 21 to 24)

Page 25

1   MR. BERMAN:  I don't think so, Your Honor.
2   THE COURT:  If there is any request for stay,
3   obviously, to afford appellate review -- we'll let the
4   dust settle.  I would direct Mr. Uhlemann to prepare an
5   order and partial summary judgment consistent with the
6   ruling of this Court coordinating that served with you,
7   Mr. Berman, but obviously, the Court will entertain any
8   potential motion for stay recognizing the import of
9   this decision.
10  MR.UHLEMANN:  Thank you, Your Honor.
11  MR. BERMAN:  Thank you, Your Honor.
12  THE COURT:  Again, my compliments to all of you.
13  And my best wishes that you and your families remain
14  safe during these difficult times.
15  MR. BERMAN:  You too.
16  THE COURT:  Thank you.
17  MR.UHLEMANN:  Thank you, judge.
18  (Whereupon, at 10:35 A.M., the hearing was
19  concluded.)

Page 26

1   CERTIFICATE
2   STATE OF FLORIDA   )
3   COUNTY OF BROWARD  )
4   I, TAMARA MASCI TANNEN, Registered Professional
5   Reporter, certify that I was authorized to and did
6   stenographically report the foregoing proceedings and
7   that the transcript is a true and complete record of
8   my stenographic notes.
9   DATED THIS 18th day of June, 2020.

12  *[signature]* TAMARA MASCI TANNEN, RPR

7 (Pages 25 to 26)